[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 50, whose birth name is Carro and the defendant husband, 51, married on September 9, 1978 in Purchase, New York. Both parties are in good health. There are two children issue of the marriage, Laura born October 13, 1983 and Stephanie born July 25, 1986. The parties have agreed that they shall have joint legal custody, principal residence with the mother and visitation with the father. The parties have disputed the details of visitation which will be resolved by the court.
The plaintiff is an assistant professor teaching at City College of New York. She is at the top of the salary scale for the position earning $55,436 annually, (Plaintiff's Exhibit #2). At the time of trial in December, 1997 the college was negotiating a new salary contract with the teachers. The plaintiff said she needs to write either articles or a book in order to gain the next level of associate professor. She states writing articles or books is impossible while she is raising the two children. Her mother has assisted the plaintiff in the past.
The plaintiff graduated from Manhattanville College in 1971, then obtained a master's degree and a Ph.D. in linguistics in 1981, both from Fordham University. She was a lecturer at City College when married.
The defendant graduated from the University of Pennsylvania Wharton School undergraduate program in 1968 and, after serving two years in the Army, returned to the Wharton School to receive an M.B.A. in December, 1971. After working for the Port Authority of New York, and New Jersey for a stint, he was hired by Citibank in July, 1974 where he is now in charge of the bank's legal and regulatory compliance. Shortly after starting his career with the bank, with its financial assistance and the G.I. Bill, the defendant received a law degree from New York Law School in 1980, passing the bar exam the same year. He now has a base salary of $159,000 based on his 21 year tenure as a vice president.
The plaintiff is in good health. The defendant has chronic back syndrome having had a spinal disc excised in May, 1995.
The plaintiff obtained her education via scholarships. She brought to the marriage a Florida lot long term purchase CT Page 3497 agreement which cost $50.00 monthly and $5,106.01 in her teacher's retirement account. The defendant had accumulated $35,000 in stocks, bonds and savings when married.
Throughout the marriage the defendant handled the finances for the family. The results are apparent from the financial affidavits. They own a home known as 4 Barn Swallow Drive, Westport, Connecticut which the parties agree has a fair market value of $615,000. (Plaintiff's Exhibit #13).
Other assets in the plaintiff's name are:
(Plaintiff's Exhibit #1):
 TIAACREF $254,292.00 TIAACREF. Supp. 76,575.00 TIAACREF. Supp. 40,532.00 (From Financial Affidavit) Citicorp IRA (Defendant's Exhibit DDD) 12,760.00 American Fund (Gruntal) 8,469.00 VISTA (BHC) 8,470.00 IRA, People's Bank 11,579.00 People's Bank Trust for minors 7,200.00 Bank Accounts 19,000.00 Florida Plot 10,000.00 Furniture, furnishings personal 10,000.00 Security deposit 4,500.00 Conn. Zero Coupon Bonds 5,500.00 Citibank IRA's 20,000.00
 Total assets in plaintiff's name $488,877.00 ----------- Other assets in the defendant's name are:
 1993 Buick automobile $12,000.00 1996 Neon automobile 12,000.00 Miscellaneous furniture furnishings and personal 8,000.00 Bank accounts 26,227.00 Gruntal Co. 60,924.00 Fidelity annuity 149,657.00 Citibank stock (11,764 shares) 1,682,252.00 Fidelity Investments 200,791.00 Fidelity IRA 10,440.00 Constitution Capital Corp. 279,239.00 Smith Barney 7,000.00 CT Page 3498 Conn. Zero Coupon Bonds 5,500.00 8 life insurance policies 69,099.00 Stock options value 635,669.00 (IRA rollovers) American Funds 14,597.00 The American Funds (IRA) 4,491.00 Citibank tax shelter 5,453.00 Citibank tax shelter IRA 15,406.00 Citibank pension value (Plaintiff's Exhibit #9) 406,407.00 Citibank Savings Incentive Plan (Plaintiff's Exhibit #11) 666,843.00
 Total other assets $4,271,995.00 ------------
The court finds further that the plaintiff's mother has certain bank accounts held in joint name with the plaintiff. The court has concluded that such accounts are the plaintiff's mother's assets and are not marital property. The court finds that the trust created by the defendant's father is for the benefit of the defendant's mother and it is speculative whether the defendant will receive any residual in the future. The defendant's mother also made annual gifts of $10,000.00 each to the defendant, the plaintiff and each child. The plaintiff delivered her gifts to the defendant.
The court does not accept the defendant's claim that he should retain all of the growth that has accrued as a result of his investment of the annual gifts. It is marital property.
The defendant received a $30,000.00 bonus in 1996 for his 1995 efforts. In addition, he received 6% of his basic salary in the form of "savings incentive program." In all, his 1996 earned income totaled $197,000.00 In 1997 he received a $20,000 bonus for his 1996 efforts.
In addition, in June of each year beginning in 1988 and ending in 1994 inclusive, the defendant was granted stock options having a pre-tax gain over cost of $584,725.00, (Plaintiff's Exhibit #10), but which the defendant now values at $635,669.
The parties have jointly owned assets as follows:
 Equity in Marital home $455,000.00 Silver certificate 322.00 Tax exempt certificate 7,000.00 CT Page 3499 ---------- Total $462,322.00 -----------
During the trial the plaintiff discovered that the defendant had purchased two life insurance policies, one naming the plaintiff as owner and insured, and himself on the other, both single premium for $10,000.00. The plaintiffs guaranteed cash value is now $17,629.00 (Defendant's Exhibit RRR). His policy cash value is now $17,672.00, (Id.) The policies had remained in the defendant's possession for their existence. The defendant faults plaintiff for failing to list the policy as an asset. The court accepts the plaintiff's statement that she never knew of it's existence.
The plaintiff has two Citicorp IRA accounts containing an amount identical to the defendant's account of $5,453.00 and $15,406.00. The plaintiff also has a Connecticut Zero Coupon Bond of $5,500.00. Plaintiff failed to list these accounts. The court does not find such omission to be wilful since plaintiff's and defendant's accounts amount to a wash.
The plaintiff failed to list her Citicorp Tax Shelter IRA (Defendant's Exhibit DDD). Again, the Certificate apparently is and was in the defendant's possession along with all the other financial records of the family.
The parties had a difficult marriage. Episodes of discord were described. The court has concluded that responsibility for the costs of the breakdown must be shared equally by the parties.
The defendant has the greater earning capacity. The defendant has the greater ability to acquire assets in the future due to his efforts. He has demonstrated acute financial skills throughout the marriage. He has been willing to assist the plaintiff's mother in handling her money. The court must take into consideration all of the elements enumerated in § 46b-81 and in § 46b-82.
Both parties engaged in fund juggling during the pending of the case. This court sees no need to address every complaint of each party.
Having considered the evidence in light of the applicable statutes and case law, the court enters a judgment dissolving the marriage and, as part of the judgment, the following orders. CT Page 3500
1. The parties are awarded joint legal custody of their minor children with physical custody given to the mother and reasonable visitation given the father as he has proposed, and as appended hereto as Appendix A.
2. By Memorandum of Decision dated December 12, 1997 (Kavanewsky, J.) the court determined and found an arrearage of $8,906.00 to be paid to the plaintiff at the rate of $1,250.00 per month. The defendant shall complete such payments. The order is not changed by the judgment.
3. The defendant shall pay to the plaintiff unallocated periodic alimony and child support of $5,000.00 monthly until the death of either party, the plaintiff's remarriage, or further court order since the order is modifiable. A contingent wage withholding order is entered.
4. The real estate known as 4 Barn Swallow Road, Westport is ordered sold and the net proceeds shall be divided equally between the parties. Any dispute over listing, broker, sale price, or other details of sale may be addressed by the court upon a motion for articulation or clarification.
5. If the parties are unable to agree on the division of their tangible personal property, the court will conduct a further hearing for the purpose of assigning ownership upon motion by either party.
6. The plaintiff shall retain her pension as her sole property.
7. The defendant shall retain his Citibank pension as his sole property.
8. The defendant's savings incentive plan is divided by the court assigning 50% off the plan to the plaintiff.
9. The plaintiff shall retain as her sole property the assets as in her name:
 Citicorp IRA (Defendant's Exhibit (DDD) American Fund Vista (BHC) Connecticut Zero Coupon Bonds (IRA's) Bank accounts Florida plot and security deposit CT Page 3501
If the $7,200.00 deposited by the plaintiff at People's is pursuant to the gift to minors account the money is left with the plaintiff as trustee, if it is in a Totten Trust i.e. revocable, it is still left in the plaintiff's control.
10. The defendant shall retain as his sole property the assets listed as in his name:
 Smith Barney account 1993 Buick Bank accounts Citibank tax shelter American Funds IRA rollover Citibank tax shelter (IRA) Connecticut Zero Coupon Bonds Citibank stock options Fidelity IRA 8 life insurance policies Gruntal Co.
11. The plaintiff is assigned 5,882 shares of Citibank stock and the defendant shall retain 5,882 shares of Citibank stock.
12. The defendant shall retain the Fidelity Annuity.
13. The plaintiff is assigned the 1996 Neon automobile as her sole property.
14. The plaintiff is assigned the Fidelity Investments, the tax exempt certificate and the Silver Certificates as her sole property.
15. The plaintiff is assigned the Constitution Capital Corp. item as her sole property.
16. Any remaining assets shall be retained by the party in whose name the item now stands.
17. Each party shall be solely responsible for the debts on the financial affidavit of the party listing same.
Counsel for the plaintiff shall prepare the judgment file. CT Page 3502
HARRIGAN, J.